## Young *et al. v.* Cobb *et al.*

[87 South. 125, No. 21583.]

VENDOR AND PURCHASER. *Bona-fide purchaser from wife to whom husband conveyed to enable her to execute bail bond held to take free from trust.*

Where a man conveys to his wife his lands in consideration of natural love and affection "and in order to enable my said wife to make a bond to secure my release," being at such time in prison and afterwards is bailed out by his wife and returns to and lives with her for eighteen or more years without seeking a reconveyance to such lands, a *bona-fide* purchaser for value, from the wife, of such lands, will get a good title free from the claims of the grantor and his heirs.

APPEAL from chancery court of Coahoma county.

HON. G. E. WILLIAMS, Chancellor.

Suit by Robert Young and others against A. C. Cobb and others. From a judgment for defendants, complainants appeal. Affirmed.

*J. W. Cutrer, Sam C. Cook, Jr.,* and *Chas. W. Clark,* for appellants.

Mr. Pomeroy has clearly defined the *status* of the title to property when conveyed by an instrument similar to the one which we have here in question. We refer par-

ticularly to 2 Pomeroy's Equity Jurisprudence (1 Ed.),
page 604, where he discusses the subject of resulting
trusts.

Quoting from the syllabus, of the case of *Smith* v. *Orton,*
131 U. S. 62, 18 Lawyer's Edition, page ——, we find this:
"The grantee to whom realty is conveyed to protect him
against the obligation of the grantor for which he has
become surety, becomes the holder of the legal title in
trust for the grantor, when the latter had discharged the
obligation and released him from liability."

In the case of *Beadle* v. *Beadle,* 40 Fed. 315, it was
held that where one of two brothers owning an interest
in land conveys the same to another by quitclaim deed,
for the purpose of convenience in making title, it creates
a trust in the grantee in favor of the grantor, and entitles
the latter to an accounting.

Our own court has had before it the construction of
an instrument similar to the one in this case, in the case
of *Alcorn* v. *Alcorn,* 79 Miss. 909. The conveyance in that
case was in the following language: "In consideration
of one dollar in hand paid, the receipt of which is hereby
acknowledged, and for the further consideration of my
dependence on my son's management to support me, and
pay off and discharge the obligations connected with the
Eagle's Nest Plantatoin, and to enable him to mortgage
and pay off mortgages, and for the further consideration
of love and affection, I convey and warrant to my son
James Alcorn," etc.

Speaking of the conveyance, the court through WHIT-
FIELD, Justice, said: "and that if the instrument of No-
vember 8, 1895, had any other effect than to empower
James Alcorn to mortgage the property, to pay debts,
etc., and passed the legal title to him, it so passed it in
trust, the whole beneficial interest remaining in Amelia
W. Alcorn, his mother."

In the case of *McDermith* v. *Voorhees,* 16 Colo. 402, 25
Am. St. Rep. 286, the court had before it a case somewhat
similar. In *Wallace* v. *Lewis,* 60 Texas, 247, the supreme

court of Texas has had for its consideration a case where
the facts and circumstances surrounding the grantor were
practically identical with those in the case at bar. *Hunt-
er* v. *Marlboro,* Fed. Case, No. 6908, 2 Woodb. & M. 168.

That the instrument is in the nature of a mortgage and
that the condition upon which the mortgage was executed
having been satisfied, the complete equitable title remained
vested in the grantor and descended to his heirs at law.
We cite: *Kelso* v. *Kelso,* 44 N. E. 1013, 45 N. E. 1065;
65 Ind. App. 615; *Hargadine* v. *Henderson,* 96 Mo. 375,
11 S. W. 218; *Bender* v. *Zimmerman,* 122 Mo. 194, 26 S.
W. 973; 1 Dembitz on Land Titles, pages 728-9-30-31; *Ash-
ton* v. *Shepherd,* 120 Ind. 69, 22 N. E. 98; *Workman* v.
*Greening,* 115 Ill. 479, N. E. 385; *Smith* v. *Parks,* 22 Ind.
59.

Quoting from Dembitz on Land Titles, *supra, page* 729,
we find this: "Where the conveyance has been made, not
to pay a debt or to obtain a loan, but to indemnify a
surety who may never be compelled to pay anything, the
intent of having a mortgage is conclusively shown."

We, therefore, submit that upon the whole case we are
entitled to a reversal of the decree of the lower court and
to a partition of the lands and an accounting as prayed
for in the original bill.

*Maynard & Fitzgerald,* for appellee.

The question is to determine what interest passed by
virtue of the deed from Sherman Young to Jennie Young.
The construction of this instrument is the sole thing to
be decided. The first proposition advanced by counsel for
appellants is that the deed was executed for a specific
purpose, carried the legal title for that purpose only, and
that the beneficial interest always remained in the grantor.

To this it is replied that the deed was executed for a
specific purpose but not the purpose for which appellant
contends. The real purpose was to convey all of his prop-
erty, real and personal, to his wife. Realizing the pre-

carious position he was in, Young deemed it best to deed her all his property, including four head of cattle and six head of stock. It was safer in her hands than in his. With this property she could hire lawyers, give bond and negotiate loans easily. If a deed recited that a man conveyed land to an indigent relative for natural love and affection, and because said relative was in poverty, would it be inferred that upon an unlooked for acquisition of wealth by this relative, the grantor could reclaim the property. We submit that there is nothing strange or remarkable in a husband conveying property to his wife, and that the proper and usual consideration is, the love and affection the grantor bears toward her.

We further submit that it is perfectly apparent and patent, that though the grantor's imprisonment may have moved him to make the deed, he intended that the legal and beneficial title should be in his wife. Many are the motives which impel men to make conveyances. Referring to Pomeroy's discussion on Resulting Trusts, "intention is an essential element, although that intention is never expressed by any words of direct creation." It would seem from this, that the position taken by appellant that the conveyance in question constitutes a resulting trust is untenable. The basis and groundwork upon which appellant proceeds is the words expressed on the face of the instrument of conveyance itself, to-wit, and to enable my wife to make bail for me. This would clearly throw the matter in to the class of express trusts, if by any chance it happened to be a trust at all.

It will be noted upon reading the discussion of Pomeroy above mentioned that he says, the equitable theory of consideration heretofore explained, is the sound and underlying principle of the entire class. Manifestly, this is true because in the majority of cases the consideration has been furnished by some one other than the holder of the legal title and equity will not permit this party to take the proceeds of another. But not so in the case at bar where the grantee was the wife of the grantor.

The presumption is that the husband intended to convey to the wife as a gift. 39 Cyc., 137-143, 3 Pomeroy (4 Ed.), sec 1041. This proposition is pretty generally accepted in all jurisdictions. *Foster* v. *Benier,* 39 Colo. 398, 89 Pac. 787, held that where a husband furnished the consideration for a conveyance of real estate to his wife in order that she might have a home in case anything happened to him, no trust resulted, but the transaction amounted to a gift. The law will not presume a resulting trust, except in cases of necessity. *Orton* v. *Knab,* 3 Wis. 576, 39 Cyc. 152; and the burden of establishing such a trust against the holder of the legal title, is on the party who asserts it, 39 Cyc. 152; *Klamp* v. *Klamp,* 51 Neb. 17, 70 N. W. 525; *Smith* v. *Orton,* 131 U. S. 62; *Beadle* v. *Beadle,* 40 Fed. 315, and *McDermeth* v. *Voorhees,* 16 Colo. 402, cited by counsel, are the usual stock cases of resulting trusts with which the books are crowded, viz., assignment for benefit of creditors, for temporary conveyance to make title, and as protection against some obligation, and for the excerpt from a Texas decision. It is not shown where the case is reported.

The construction must be upon the whole deed and not merely disjointed parts of it. *Savannah* v. *Barnes,* 148 Ga. 317, 96 S. E. 625. "To create a condition subsequent in a deed, the breach of which will cause the land to revert, the terms of the instrument must clearly show that the grantor intended it to have that effect; and its words are to be taken most strongly against him." *Soria* v. *Harrison Co.,* 96 Miss. 109.

"Where there is a discrepancy between the recitals and operative part of a deed, the operative part if clear and unambiguous must be followed." Also, "the recitals of the preamble are merely the expression of the motive inducing the execution of the deed, and do not create a condition and therefore cannot control the granting clauses of the deed." *Miller* v. *Tunica Co.,* 67 Miss. 654.

"Equity abhors forfeitures and looks with hostility on conditions subsequent. To give the right of reverter

through the courts it should be expressed in the instrument that by devotion of the land to a purpose other than that indicated, the whole estate should revert to the grantor and his heirs." *Thornton* v. *Natchez,* 88 Miss. 19; *Gadberry* v. *Sheppard,* 27 Miss. 203.

"A voluntary conveyance of land cannot be vacated at the instance of the grantor thereof upon the mere ground that it was without any consideration nor will such grantor be permitted to dispute the existence of the consideration expressed in the deed." *Day* v. *Davis,* 64 Miss. 253.

"Subsequent conditions are those which operate upon an estate already vested and rendered it liable to be defeated. All that remains in the grantor is the possibility of reverter or right of entry upon condition broken. The estate will remain defeasible until condition be performed, destroyed or barred by the statute of limitations or by estoppel." Also, "In order to revert an estate forfeited for conditions broken, the grantor must make an entry, etc." *M. & C. R. R. Co.* v. *Neighbors,* 51 Miss. 412.

"A husband may convey their homestead to his wife without her joining in the deed and the conveyance will vest her with title in fee, but does not affect its homestead character." *Burkett* v. *Burkett* (Cal.), 12 Am. St. Rep. 58 and note; *Turner* v. *Brenheimer* (Ala.), 36 Am. St. Rep. 207, 10 So. 750; (Arizona), 57 Par. 605; (Ark.), 79 S. W. 766; (Iowa), 91 N. W. 1069; (Mich.), *Lynch* v. *Doran,* 54 N. W. 882; (Neb.), 59 Am. Rep. 867; (Okla.), 57 Pac. 168; (Wis.), 28 Wis. 84; (United States), *Thompson* v. *McConnell,* 107 Fed. 33, 25 Cent. Dig. title Homesteads, sec. 182, 21 Cyc., p. 536. Thompson on "Homestead Exemptions" Ill. 473.

In Illinois, it seems that the deed from husband to wife, unless she joins in the deed, will not alone pass title unless possession is delivered to wife. *Anderson* v. *Smith,* 42 N. W. 306; Also, 101 Am. St. Rep. 217. In *Lynch* v. *Doran* (Mich.), 54 N. W. 882, the reason of the rule not requiring the wife to join in the deed is as follows: "The policy of those statutes which restrain the alienation of

the homestead without the wife joining in the deed is to protect the wife and to enable her to protect the family in the possession and enjoyment of a homestead after one has been acquired by the husband. They are intended to interpose obstacles in the way of a conveyance of the homestead to the wife or to the wife and children, with the consent and approval of the wife, whatever may be the form of the conveyance. To require a deed from a wife to herself would be senseless." 21 Cyc., p. 536, note 41.

Our court has not directly passed on this question. In *Chatman* v. *Poindexter,* 101 Miss. 496, counsel on both sides agree that the wife does not have to join in her husband's deed to her alone; but the court merely said on that point it may be, as contended by appellee, that this deed in so far as it conveys an interest in the land to the wife, is valid, as to which we express no opinion."

As to the second proposition advanced by appellant we think the foregoing reasoning and authorities applies with equal force. There is nothing on the face of the instrument, and no parol testimony adduced to sustain an analogy to a mortgage.

ETHRIDGE, J., delivered the opinion of the court.

On the 12th day of April, 1892, Sherman Young executed to Jennie Young a conveyance in the following language:

"Know all men by these presents that I, Sherman Young, of Coahoma county, Miss., for and in consideration of the love and affection I bear my wife, Jennie Young, and in order to enable my said wife to make a bond to secure my release, I have this day granted, bargained, sold and conveyed unto my said wife, and do hereby grant, bargain, sell and convey unto her and her heirs and assigns forever all those certain tracts or parcels of land situated in Coahoma county, Miss., and commonly known as the Sherman Young Home Place and Old River Place, containing in all about one hundred twenty-five acres. Also about forty

head of cattle and three horses and three mules, same be-
ing all the horses and mules and cattle I own and being
in said places and the adjoining ranges. To have and to
hold the said above described tracts and parcels of land
and the said mules, horses and cattle to her the said Jennie
Young and her heirs and assigns forever.

"Witness my signature this 12 day of April, 1892.

his<br>
SHERMAN X. YOUNG."<br>
mark

This deed was acknowledged and filed for record the
same day. After the execution of the deed, Sherman
Young, who was then in jail, was released on a bond exe-
cuted by his wife and himself, and they returned to the
premises conveyed in said deed and lived together upon
said place as man and wife until the death of Sherman
Young in 1911. The case was tried on an agreed state-
ment of facts, which among other things says that at the
time of the death of said Sherman Young there were in-
debtednesses on said property evidenced by mortgage made
by Jennie and Sherman Young, and that A. C. Cobb paid
off certain of the same; and it is further agreed that J. D.
Robinson, Jr. and Sr., and R. B. Hebdon would testify
on trial that some of the children of Sherman and Jennie
Young after the death of Sherman Young worked the
lands, or parts thereof, and paid to Jennie as rent there-
for one-half the agricultural products and made no claim
to the property, and that at all times since the deed from
Sherman to Jennie she claimed to own the lands as her
own and lived on them up to the time of the deed to Cobb,
and that since that time Cobb had exclusive continuous
control and possession, but that the complainants will tes-
tify that Sherman always claimed the land as his own. It
is further agreed that certain witnesses would testify that
the amount paid as rent above mentioned was to be ap-
plied to the payment of any indebtedness against the prop-
erty. It is further agreed that certain witnesses would

testify that after Sherman was released from custody he lived on the said land with Jennie and that no controversy ever arose as to the ownership thereof, but that Sherman had the management of the property and disposed of its products with Jennie's consent. It is further agreed that Cobb went into possession by virtue of warranty deed executed to him by Jennie Young and certain of the children purporting to convey said lands to him for a valuable consideration, being the actual cash value or thereabouts, but that the complainants did not sign such deed. It is further agreed that Cobb is an innocent purchaser for value of said property, except for any legal notice which may be held by the court to be implied in the wording of the deed above mentioned. It is further agreed that the complainants are the children of Sherman Young and are among his heirs and are not residents of Coahoma county, Miss., and have not been since long before the death of Sherman Young and have never claimed or received any parts of the rents or profits of the lands in controversy.

The answer of Cobb was made a cross-bill and prayed for the cancellation of the claims of complainants as to the lands embraced in his deed. On the hearing the court dismissed the bill as to the lands bought by Cobb, but retained the bill for further hearing as to the property not deeded to Cobb and on the cross-bill of Cobb granted the relief prayed canceling the complainants' claim as a cloud.

The appellants insist that the provision in the deed which recites as part of the consideration the purpose of enabling Jennie Young to make a bail bond makes the conveyance a conveyance in trust, and that this was sufficient notice to Cobb to prevent the rule of *bona-fide* purchaser applying. The deed recited as a part consideration for love and affection, which of itself was a good consideration between husband and wife, and would vest in the wife the full fee subject only to right of existing creditors. The fact that Sherman was released and lived for nineteen years thereafter without seeking any reconveyance is strongly persuasive of the view that he intended the con-

veyance to operate as a deed in fee simple and not a trust. Certain it is, however, that where a party places his property by deed in another person and a third person acquired the property for a valuable consideration relying upon such deed, the grantor in the deed and his heirs would not be permitted to assert a trust against such *bona-fide* purchaser. The question of trust is largely one of intention, and as between the wife and the heirs of Sherman Young there may be some equities with the complainant, but we do not now decide this question.

It follows from what we have said that the judgment will be affirmed.

*Affirmed.*